E-FILED
CNMI SUPERIOR COURT
E-filed: Dec 19 2006 5:34PM
Clerk Review: Dec 20, 2006
Filing ID: 13232712
Case Number: 04-0220-CV
Bernie A Sablan

Matthew T. Gregory, Attorney General # F0205
Alan J. Barak, Assistant Attorney General # T0020
Gregory Baka, Deputy Attorney General # F0199
Attorney General's Office
2nd Fl., Juan A. Sablan Mem. Bldg., P. O. Box 10007
Saipan, MP 96950      barakalanj@earthlink.net
tel: 670.664.2341; fax: 670.664.2349

Attorneys for Defendants DPW and DPL, respectively

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Jose Ch. Camacho, | CIVIL CASE NO. 04-0220-E |
| Plaintiff, | |
| vs. | DECLARATION OF JOHN S. DELROSARIO, JR. |
| CNMI DPW and MPL, | Hearing Date: Dec. 21, 2006 |
| Defendant. | Time: 9:00 a.m. |
| | Judge: Hon. David A. |

I, JOHN S. DELROSARIO, JR., declare as follows:

1. I am the Secretary of the Department of Public Lands (DPL), and I am competent to testify to the matters contained herein.

2. As the DPL Secretary, I am held to a strict standard of fiduciary care pursuant to Article XI of the Commonwealth Constitution (Constitution) and Public Law 15-2.

3. Article XI, Section 1 of the Constitution provides that all public lands belong collectively to the people of the Commonwealth who are of Northern Marianas descent.

4. Section 5 g) of the Constitution provides that DPL shall receive all moneys from public lands except those lands in which a freehold interest has been transferred to another agency of the government, and shall transfer these moneys at the end of each fiscal year to the Marianas Public Land Trust (MPLT), except it may retain an amount necessary to meet reasonable expenses of administration and management, land surveying, homestead development, and any other expenses reasonably necessary for the accomplishment of its functions.

5. The Department of Public Works, the Commonwealth Utilities Corporation, the Department of Lands and Natural Resources, Division of Parks and Recreation, the Historical Preservation Office, the Public School System, the Northern Marianas College, and the Office of the Governor, to name a few, all have needs to acquire private lands from time to time to serve public purposes.

6. The Department of Public Lands and its predecessor agencies have not and never will have a need to acquire private lands for any public purpose, and if it were to do so, would be in violation of its mandates

under the Constitution and Public Law 15-2, and hence would violate the strict standard of fiduciary care imposed upon it.

7. Compensation for public purpose takings by the Commonwealth is the responsibility of the taxpayer, and funds are appropriated from time to time by the Commonwealth Legislature for such purpose, and payment is made out of taxpayer generated revenues.

8. Public Law 13-17, as amended, originally appropriated $40,000,000.00 through a taxpayer obligated bond issue, of which only approximately $28,000,000.00 was finally allocated for the purpose of retiring claims against the Commonwealth for private properties taken for public purposes.

9. The appropriation provided that the Marianas Public Lands Authority (MPLA), a predecessor to the DPL, act on behalf of the Commonwealth in negotiating and settling past claims of compensation for public purpose takings by the Commonwealth.

10. The MPLA was to simply represent the Commonwealth in settling the claims by paying out taxpayer generated revenues, i.e., the bond issue, but nowhere was it contemplated that DPL generated revenues be used for such purpose, as those funds belong exclusively to persons of Northern Marianas descent, not the public in general.

11. The DPL has no funds for further land compensation, and the Legislature has not identified additional funds for appropriation.

12. Prior to its closure and receivership, the Bank of Saipan held MPLA funds generated from public land revenues.

13. All funds at the Bank of Saipan prior to its closure were allocated to homestead development projects.

14. Homestead development projects require funds to be reserved for several years during the project development and construction phases, and for that reason, funds were retained by MPLA at the Bank of Saipan and not remitted to MPLT.

15. During the Bank of Saipan receivership, MPLA entered into an agreement with the Bank for the gradual payout of its principal and interest over a period of several years, and the Bank continues to owe the DPL substantial principal plus interest according to the terms of the agreement.

16. DPL must continue to rely on the funds it receives from the commercial use of public lands and payments received from the Bank of Saipan to fully comply with its constitutional mandates, including homestead development, albeit at a much slower pace.

17. As Secretary of DPL, it is my responsibility as trustee to the beneficiaries of public lands to ensure that all revenues received from

the use of public lands be protected and preserved as mandated by the Constitution and Public Law 15-2, and to not allow any expenditure of the funds for "public" purposes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __19TH__ day of December 2006, in Saipan, Commonwealth of the Northern Mariana Islands.

_____
JOHN S. DELROSARIO, JR.
Secretary, Department of Public Lands